UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DEBORAH BYGUM, Administratrix of
the Estate of ERIC MITCHELL YOUNG,
deceased,

        Plaintiff,

v.                      Civil Action No. 2:19-cv-00456

The CITY OF MONTGOMERY and
ROGER L. KING, individually
as a member of the Montgomery
Police Department,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending are four motions in limine of defendants Roger L. King ("Officer King") and City of Montgomery, one filed September 8, 2020, and three filed October 5, 2020.  Also pending is the omnibus motion in limine of plaintiff Deborah Bygum, filed October 5, 2020.

I. Standard of Review

        The admissibility of evidence is within the discretion of a district court.  <u>See</u> Fed. R. Evid. 102; <u>United States v. Fulks</u>, 454 F.3d 410, 434 (4th Cir. 2006); 1 <u>Weinstein's Federal Evidence</u> § 102.03 (Lexis 2021).  This discretion extends to decisions to admit or exclude expert testimony.  <u>See</u> <u>Bresler v.</u>

Wilmington Trust Co., 855 F.3d 178, 195 (4th Cir. 2017); 4

Weinstein's Federal Evidence, supra, § 702.02[4].

"The purpose of a motion in limine is to allow a court

to rule on evidentiary issues in advance of trial in order to

avoid delay, ensure an even-handed and expeditious trial, and

focus the issues the jury will consider."  Intelligent

Verification Sys., LLC v. Microsoft Corp., No. 2:12-cv-525, 2015

WL 1518099, at *9 (E.D. Va. Mar. 31, 2015).  Importantly,

"[h]owever, a motion in limine should be granted only when the

evidence is clearly inadmissible on all potential grounds."  Id.

(quotation marks omitted).

## II. Defendants' Motions in Limine

The court first considers defendants' four motions in

limine: to exclude portions of the reports of plaintiff's

experts, ECF No. 97; to exclude the transcript of Officer King's

statement given in the aftermath of the shooting underlying this

case, ECF No. 107; to exclude evidence of the deceased's lost

income, lost services and other care, and funeral expenses, ECF

No. 109; and to bifurcate the issue of punitive damages, ECF No.

110.

**A. Motion to exclude portions of the reports of plaintiff's experts**

Plaintiff retained two experts in this case.  Jeremy J. Bauer, Ph.D. ("Dr. Bauer"), is a forensic reconstructionist retained to opine on, inter alia, the respective positions of Officer King and Eric Mitchell Young ("Young") during the shooting that gave rise to this case.  See Bauer Report 5, ECF No. 97-1.  Michael Gerard ("Gerard") is a former police officer retained to opine on Officer King's actions during his encounter with Young.  See Gerard Report 2, ECF No. 94-4.  Defendants seek to exclude portions of the opinions of both experts.

**1. Dr. Bauer**

First, defendants contend that Dr. Bauer's opinions on the respective positions of Officer King and Young during the shooting is unreliable because it is "based upon assumptions not supported by the record."  ECF No. 98 at 7; see also id. at 7-8.  Under Federal Rule of Civil Procedure 702(b), expert testimony must be "based on sufficient facts or data."  That is, expert testimony must "rest[] on a reliable foundation."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).  "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the

record." <u>Tyger Constr. Co. v. Pensacola Constr. Co.</u>, 29 F.3d 137, 142 (4th Cir. 1994).  The opinion, however, does not have to be "irrefutable or certainly correct" to be admissible. <u>United States v. Moreland</u>, 437 F.3d 424, 431 (4th Cir. 2006), <u>overruled on other grounds as recognized by</u> <u>United States v. Diosdado-Star</u>, 630 F.3d 359, 364-66 (4th Cir. 2011).  "As with all other admissible evidence, expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"  <u>Id.</u> (alteration in original) (quoting <u>Daubert</u>, 509 U.S. at 596).

In reconstructing the shooting, Dr. Bauer considered, <u>inter alia</u>, the location of bullet casings ejected from Officer King's firearm as indicating the point from which a given shot was fired, the location and entry angles of Young's bullet wounds, Young's location and position of rest, and Officer King's investigatory statement taken soon in the aftermath of the shooting and his later deposition testimony in this case. <u>See</u> Bauer Report 2-5; Bauer Suppl. Report 1-3, ECF No. 97-2.

From that information, Dr. Bauer reconstructed the shooting to determine the respective positions of Officer King and Young.  <u>See</u> Bauer Suppl. Rep. 5, Fig. 4 (visualization of

4

reconstruction).  Dr. Bauer concludes as follows, in relevant part:

> 1) Mr. Young was between 25-50' away from Officer King when each of the four bullets struck him, inconsistent with Officer King's statement claiming he was 8 feet away [from] Mr. Young when he fired at Mr. Young;
>
> 2) Mr. Young was likely 50 feet away from Officer King and facing Officer King when Mr. Young was shot in the left side of his chest;
>
> 3) Mr. Young was standing on the corner of 3rd Ave. and Jefferson St. and rotating to his right with respect to Officer King, when the remaining 3 bullets struck Mr. Young.  The evidence is inconsistent with Mr. Young actively charging toward Officer King when Mr. Young was shot . . . .

Id. at 6.  The report and Dr. Bauer's testimony further detail that Young was not running or charging at Officer King, but that Dr. Bauer "[cannot] eliminate whether or not [Young] was moving forward or walking backward."  Bauer Dep. 30, ECF No. 116-6. Dr. Bauer opines that Officer King, on the other hand, advanced on Young in an approximate 42-foot leftward arc, firing the first shot from about 50 feet away and the last shot from about 25 feet away.  See Bauer Suppl. Report at 5, Fig. 4; see also id. at 4-6; Bauer Report 10, Fig. 9.

Defendants argue that all of Dr. Bauer's opinions on the relative positions of Officer King and Young -- the opinions described above -- are unreliable and should be excluded.  As defendants put it, "[t]he lynchpin to [Dr. Bauer's] opinions is

that Mr. Young's position where he was shot is the same as his position of rest." ECF No. 98 at 7. Defendants contend that Dr. Bauer erroneously relies on portions of Officer King's post-incident statement, id. at 3, which reads as follows:

> Q: Do you know how many times you shot?
>
> A: I thought I shot him four. I thought three or four times. I can't remember.
>
> Q: Ok.
>
> A: It didn't stop him.
>
> Q: He kept coming after you shot?
>
> A: I shot twice, I remember, and he just kept coming and then he turned around and he turned around again and that's when I thought he was gonna' reach or something and I shot one more and that's when he fell. [inaudible] . . . he fell, I went to roll him over and tried to help.
>
> . . .
>
> A: . . . When he fell, he fell on his . . . he fell on his . . . on his back and he was . . . his legs was facing towards Kanawha side and his head was my way.

King Statement at 5-6, 11, ECF No. 64-1. To support his position that "Mr. Young fell once Officer King fired his last shot," Dr. Bauer highlights, inter alia, the portion of Officer King's statement beginning "I shot twice" and ending "and I shot one more and that's when he fell." Bauer Suppl. Report 4; see also id. at 3-6. Defendants accuse Dr. Bauer of "fabricating evidence to suit a narrative" through what defendants call "a speculative parsing of words." ECF No. 122 at 4.

Instead, defendants insist in their brief that "[t]he undisputed sworn testimony is that Mr. Young" charged at Officer King and "fell after being shot, stood up[,] and walked away" to his position of rest.  See ECF No. 98 at 7.[1]  Specifically, Officer King testified as follows:

> All shots were fired when [Young] was charging . . . .
>
> . . .
>
> Once I shot, he stood completely straight up, turned completely around away from me, and walked a good distance.  And then that's when he collapsed against the fence line.

King Dep. 106-07, ECF No. 64-2.[2]  Additionally, defendants argue that the trail of bullet casings is explained by Officer King's allegedly "consistent[ testimony] that he was moving backwards when he discharged his weapon," not Officer King moving toward Young.  ECF No. 98 at 5.  Last, defendants contend that Dr. Bauer's opinion that Young was not charging or running at Officer King is "speculative" because Officer King might not have meant "running" when he testified that Young "charged" at him.  ECF No. 122 at 4-5.

---

[1] Defendants ask the court to draw conclusions about the facts of this case based on surveillance footage that allegedly captures the encounter.  See, e.g., ECF No. 98 at 3.  For purposes of motions in limine, the court finds the video of no value because of its poor quality.

[2] Defendants also claim that "the physical evidence confirms" King's testimony, ECF No. 98 at 7, although their explanation of how is unclear, see id. at 4, ECF No. 122 at 2-3.

In the court's view, Officer King's statements are
ambiguous concerning the respective positions of Officer King
and Young during the shooting.  The written transcript of
Officer King's post-shooting statement suggests Young fell when
shot and did not mention that he moved, whereas his deposition
testimony stated that Young stood up after the last shot, walked
away a good distance, and then collapsed against the fenceline.
Additionally, defendants' arguments that Officer King
consistently stated that he fired while moving backward and that
Officer King might not have meant Young ran at him when he
stated Young "charged" at him appear to be belied by the
evidence: Officer King's deposition testimony appears to state
that he fired the five shots while standing still, <u>see</u> King Dep.
63-64,[3] and that Young ran at him when "charging," <u>id.</u> at 61.
Dr. Bauer does not appear to have "fabricated" evidence, as
defendants charge.  Rather, plaintiff correctly notes that Dr.
Bauer may exercise judgment in evaluating the facts of the case
when forming his opinions.  <u>See</u> ECF No. 116 at 3-4, 4 n.4
(citing <u>Bresler</u>, 855 F.3d at 195).  And defendants may attempt

---

[3] Indeed, the portion of Officer King's deposition cited by
defendants suggests that Officer King did not move backward when
he fired his weapon for fear of tripping over a curb.  <u>See</u> King
Dep. 63-64.  The locations of the bullet casings, however,
indicate that Officer King was in the middle of the street at
that time.  <u>See</u> Bauer Suppl. Report 5, Fig. 4.

to impugn "the weight and credibility" of Dr. Bauer's opinions because of his judgment.  <u>Bresler</u>, 855 F.3d at 195.

Perhaps most importantly, King's post-incident statement clearly is not, as defendants purport, "[t]he sole basis" for Dr. Bauer's opinions.  ECF No. 98 at 7.  Dr. Bauer relied on a host of evidence, physical and testimonial, in reconstructing the shooting.  <u>See</u> Bauer Report 2-5; Bauer Suppl. Report 3-6, ECF No. 97-2; <u>see</u> <u>generally</u> Order on defendants' motion for summary judgment, Part I (discussing the bases for Dr. Bauer's opinions on the respective positions of Officer King and Young during the shooting).

There is a line where assumptions open to cross-examination become those that are so far removed from fact that they render an expert's testimony unreliable.  <u>See</u> <u>Tyger</u> <u>Constr.</u>, 29 F.3d at 142.  Dr. Bauer's assumptions do not approach that line.  Thus, defendants' motion to exclude Dr. Bauer's opinions on the respective positions of Officer King and Young must be denied.

Second, Dr. Bauer proffers the opinion that "[t]here was no scientific, or testimonial evidence to support that Mr. Young was holding a knife at the time he was shot by Officer King."  Bauer Suppl. Report 6.  Defendants argue that "[t]his is not an expert opinion" because it violates Rule 702(c)'s

requirement that expert testimony be "the product of reliable principles and methods."  ECF No. 98 at 8 (quoting Fed. R. Evid. 702(c)).

Plaintiff does not respond to that argument.  Indeed, it does not appear that any of the methodology applied by Dr. Bauer related to whether Young was holding a knife.  <u>See generally</u> Bauer Report; Bauer Suppl. Report.  Instead, Dr. Bauer is simply restating a fact in the record, which is an unreliable application of expert testimony.  The court also notes that expert testimony is not helpful when the ultimate opinion is simply a restatement or presentation of a fact to the jury.  <u>Scott v. Chipotle Mexican Grill, Inc.</u>, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702.  Although an expert may rely on facts or other data in evidence when constructing an expert report, a party may not present an expert to the jury solely for the purpose of constructing a factual narrative based upon record evidence." (quotation marks omitted and citing cases)).  Thus, defendants' motion to exclude Dr. Bauer's opinion and testimony on whether Young was holding a knife is granted insofar as Dr. Bauer offers that fact as an opinion.  In any event, the pocketknife is a non-issue inasmuch as Officer King acknowledged that Young had

an unopened pocketknife on his person, clipped to his pocket, of which he was unaware until after the shooting.  King Statement 12.

      2. Gerard

Defendants argue that portions of Gerard's opinions that embrace the "ultimate issue" of excessive force should be excluded because they are unhelpful, unduly prejudicial, and confusing.  See ECF No. 98 at 9-11; ECF No. 122 at 7. Defendants identify two phrases used by Gerard in his expert report that they allege are unhelpful: whether Officer King's actions were "objectively reasonable," or some iteration thereof, and whether Young posed an "immediate threat of death or great bodily harm."  ECF No. 98 at 10.  Defendants also contend that, insofar as Gerard uses terms like "objectively reasonable" in the context of applying industry standards or Montgomery Police Department policy, Gerard's opinions are unduly prejudicial and likely confusing to the jury because the language is the same as the ultimate issue to be decided by the jury.  See ECF No. 98 at 10-11; ECF No. 122 at 7.

Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  The opinion, however, may still be

inadmissible under another rule.  <u>United States v. Perkins</u>, 470 F.3d 150, 157 (4th Cir. 2006).  "The touchstone of admissibility of testimony that goes to the ultimate issue . . . is helpfulness to the jury" under Rules 701 and 702.  <u>Id.</u>  In addition, "[t]estimony admissible under Rule 704(a) may be excluded under Rule 403 when the probative value of an opinion on an ultimate issue is substantially outweighed by the risk of prejudice, confusion or waste of time."  4 <u>Weinstein's Federal Evidence</u>, <u>supra</u>, § 704.03[3].

Regarding helpfulness, the task of "distinguish[ing] [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion . . . is not an easy one."  <u>Perkins</u>, 470 F.3d at 158 (first and last alterations added) (quoting <u>United States v. Barile</u>, 286 F.3d 749, 760 (4th Cir. 2002)).  The Fourth Circuit maintains that "[t]he best way to determine whether opinion testimony [is unhelpful because it merely states] legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular."  <u>Id.</u> (quotation marks omitted) (quoting <u>Barile</u>, 286 F.3d at 760).  The Fourth Circuit acknowledges that the rule is easier said than done, requiring "ultra-fine distinctions, with admissibility often turning on

word choice: the question 'Did T have capacity to make a will?' impermissibly asks for a legal conclusion, while the question 'Did T have sufficient mental capacity to know the nature and extent of his property?' does not." Id. (quoting Fed. R. Evid. 704 advisory committee's notes to 1972 proposed rules).  The inquiry is case-specific and requires analysis of the phrasing of both questions and answers.  See id. at 159-60.

        Both parties draw the court to the Fourth Circuit's decision in Perkins, 470 F.3d 150.  In that case, the Fourth Circuit addressed the helpfulness of expert testimony bearing on the reasonableness of use of force in a criminal deprivation of rights case under 18 U.S.C. § 242, id. at 157, "the criminal analog" to 42 U.S.C. § 1983, id. at 159 n.12.  Under § 242, an officer's use of force is judged against the standard of a "reasonable officer in the same circumstances," as in a § 1983 case.  Id. at 159; see Graham v. Connor, 490 U.S. 386, 397 (1989) (section 1983 standard).

        Notably, in Perkins, there were no objections to the actual use of the word "reasonable" during trial testimony, and the Fourth Circuit found that those statements did not constitute plain error.  See 470 F.3d at 160.  So it is unclear what line, if any, the Fourth Circuit drew for testimony of "reasonableness" in excessive force cases.  In fact, the Fourth

Circuit counseled against drawing lines, stating that the
analysis is case-specific and cautioning that ultimate issue
testimony "distinction[s] must be measured in inches, not feet."
Id. at 159-60.  "[A]ctually fram[ing] the term in its
traditional legal context" is certainly inadmissible.  See id.
at 160.  But otherwise, the Fourth Circuit explained that "it is
difficult . . . to conclude that testimony [is] unhelpful"
"[w]hen the common and legal meanings of a term are not easily
unfurled from each other, . . . as is certainly the case with
'reasonable.'"  Id.

        Nevertheless, analysis of the case law reveals that
witnesses generally may testify to matters like specialized
knowledge, professional standards, police practices, and
department policies, which sometimes involve appraisals of
"reasonableness" so long as such appraisal is in the context of
the knowledge, standard, practice, or policy.  See, e.g.,
Jimenez v. City of Chicago, 732 F.3d 710, 719 (7th Cir. 2013);
United States v. Myers, 972 F.2d 1566, 1577-78 (11th Cir. 1992);
King v. Taylor, 944 F. Supp. 2d 548, 555-56 (E.D. Ky. 2013)
(citing cases); Becker v. City of Evansville, No. 3:12-cv-00182-
TWP-MPB, 2016 WL 6395868, at *4-5 (S.D. Ind. Oct. 28, 2016); cf.
Vizbaras v. Prieber, 761 F.2d 1013, 1019 n.4 (4th Cir. 1985)
(Winter, C.J., concurring) ("I agree with the majority that

                            14

evidence of standard police department operating procedures was
admissible, but only as a guide to the jury as to what is
reasonable under given circumstances . . . .").

In this case, the court notes that many of the
standards and policies quoted in Gerard's report incorporate
terms like "reasonable."  <u>See</u> Gerard Report 14-19.
Consequently, defendants' motion to exclude regarding Gerard is
denied insofar as defendants seek to exclude his reference to
professional standards, police practices, and department
policies.

In addition, the court highlights the following
caution from the Fourth Circuit on testimony invoking the term
"reasonable" in excessive force cases:

> When the common and legal meanings of a term are not
> easily unfurled from each other, however, as is
> certainly the case with "reasonable," it is difficult
> for us to conclude that testimony was unhelpful to the
> jury unless the testimony actually framed the term in
> its traditional legal context.

<u>Perkins</u>, 470 F.3d at 160.  The Fourth Circuit's treatment of
"reasonable" epitomizes those terms requiring "ultra-fine
distinctions, with admissibility often turning on word choice."
<u>Id.</u> at 158.  Thus, with that guidance in mind, the court denies
defendants' motion as premature insofar as they seek a
prospective prohibition of Gerard employing the term
"reasonable" and iterations thereof during testimony at trial.

Last, the court finds that the legal meaning of the phrase "immediate threat of death or great bodily harm" does not differ so much from its common usage that it would be unhelpful to the jury to hear it.  Therefore, the court denies defendants' motion regarding the phrase "immediate threat of death or great bodily harm."

B. Motion to exclude the transcript of Officer King's post-incident interview

Defendants seek to exclude the written transcript of Officer King's interview taken in the aftermath of the shooting. ECF No. 108.  Under Federal Rule of Evidence 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Although plaintiff argues that written transcripts have been allowed in other cases, ECF No. 117 at 2-3, defendants correctly note that the transcripts in those cases were supplements to, not replacements of, the audio recordings, ECF No. 121 at 1-2.  E.g. United States v. Facey, 244 F. App'x 251, 259 (11th Cir. 2007).  Defendants also suggest they are not opposed to use of the written transcript so long as the corresponding audio recording is played.  See ECF No. 121.  The court agrees and adopts that suggestion.

16

### C. Motion to exclude undisclosed evidence of special damages

Defendants seek "to exclude all evidence of compensation for the reasonably expected loss of (i) income of the decedent and (ii) services, protection, care, and assistance provided by the decedent[] as well as 'reasonable funeral expenses.'"  ECF No. 109 at 1.  Plaintiff did not respond. Defendants' motion is granted.

### D. Motion to exclude evidence of punitive damages or, alternatively, to bifurcate the issue of punitive damages

Defendants request that the court exclude matters related to punitive damages or, alternatively, that the court bifurcate the issue of punitive damages.  ECF No. 111.  Inasmuch as plaintiff does not contest a bifurcated punitive damages trial, ECF No. 118 at 2, the court grants defendants' motion insofar as it seeks bifurcation of the issue of punitive damages.

## III. Plaintiff's Motions in Limine

Plaintiff filed an "omnibus" motion in limine containing 20 separate motions.  See ECF No. 106.

A. Motions 1 through 10

Defendants do not object to motions 1 through 10 but "request the entry of an Order that is applicable to all parties as it relates to these issues." ECF No. 119 at 1. Plaintiff does not reply to this request. Thus, motions 1 through 10 are granted with respect to all parties to the case.

B. Motions 11 through 13

Motion 11 seeks to exclude evidence of an unidentified "past criminal history or past arrests" of Young. ECF No. 106 at 4. "Motions in limine that seek exclusion of broad and unspecific categories of evidence, however, are generally disfavored." Tompkins v. Eckerd, No. 8:09-02369-JMC,, 2012 WL 1110069, at *2 (D.S.C. Apr. 3, 2012) (citing Sperberg v. The Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975)). Rather, "[c]ourts have recognized that it 'is almost always better situated during the actual trial to assess the value and utility of evidence.'" Id. (quoting Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007)). The court finds this is particularly true when the party seeking an order in limine has not identified an item of evidence that is allegedly inadmissible. Thus, the court denies motion 11 as premature.

18

Motion 12 seeks to exclude evidence of an unidentified "past history of drug and/or alcohol use."  ECF No. 106 at 4. The court denies motion 12 as premature.

Motion 13 seeks to exclude evidence of an unidentified "work history (or lack thereof)."  Id.  The court denies motion 13 as premature.

C. Motions 14 and 15

Motions 14 and 15 seek to exclude evidence "suggesting that Mr. Young was on drugs when the shooting occurred," and to exclude "improper opinion testimony" by Officer King "that Mr. Young's pain receptors were blocked" based on Young pulling taser probes from his body seemingly unaffected, respectively. Id. at 4-5.  As defendants note, Rule 701 permits a lay witness to testify "in the form of an opinion" so long as the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

Plaintiff does not object to perception testimony about perceived influence of intoxicating substances, so long as

the testimony is in the form of Officer King's perception.  ECF No. 124 at 3.  Plaintiff does object, however, to the pain receptor testimony, insisting that it falls under expert testimony.

The court disagrees and finds that it is within the common experience of lay people that a person seemingly unaffected by a taser might be unable to feel pain.  Cf. Hendrickson v. Cooper, 589 F.3d 887, 892 (7th Cir. 2009) (finding that "[n]o expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations"); Landis v. Galarneau, No. 2:05-cv-74013, 2010 WL 458143, at *8 (E.D. Mich. Feb. 3, 2010) (rejecting expert opinion "that a person fighting [police] may not feel pain" because "everyday experience is sufficient to understand" that point).  In addition, the court does not believe that the probative value of Officer King's perception testimony is substantially outweighed by any of the Rule 403 factors.  Thus, the court denies motions 14 and 15.

D. Motion 16

Motion 16 seeks to exclude evidence "regarding the alleged choking incident between Mr. Young and his brother prior to the shooting incident with Officer King."  ECF No. 106 at 5.

20

Defendants concede that Officer King lacked knowledge of the choking incident until after the shooting.  <u>See</u> ECF No. 119 at 4.

The alleged choking incident is irrelevant.  Claims of excessive force are concerned with "objective reasonableness" of the officer's actions, which requires evaluation of the time "immediately prior to and at the very moment . . . that force is employed."  <u>Betton v. Belue</u>, 942 F.3d 184, 191 (4th Cir. 2019) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 399 (1989); <u>Greenidge v. Ruffin</u>, 927 F.2d 789, 792 (4th Cir. 1991); and <u>Waterman v. Batton</u>, 393 F.3d 471, 477 (4th Cir. 2005)).  Consequently, matters preceding the use of force and outside the knowledge of the officer are irrelevant to excessive force claims.

Even so, defendants argue that the alleged choking incident is admissible as a Rule 404(b) prior bad act that shows a "prior violent tendency mere minutes before [Young's] encounter with Officer King."  ECF No. 119 at 5 (emphasis omitted).  According to defendants, that prior violent tendency "is probative to the issue of whether Mr. Young made a charging and/or threatening advancement towards Officer King" and also proves "[Young's] act of charging was not a mistake, accident, and otherwise that Mr. Young had motive to kill and/or evade capture by law enforcement due to [the alleged choking incident]

21

and the requisite intent to engage in violent conduct."  ECF No. 119 at 5.  Defendants' stated basis for the admissibility of the alleged choking incident sounds like an attempt to do what Rule 404(b) prohibits: using a bad act to show that Young had a propensity to commit a similar act.  Fed. R. Civ. P. 404(b)(1). Thus, the court grants motion 16 insofar as defendants intend to introduce the incident inconsistently with Rule 404(b).

    E. Motion 17

        Motion 17 seeks to exclude any statement "that Mr. Young was 'armed' when he was shot and killed by Officer King." ECF No. 106 at 6.  As the parties note, Young had a pocket knife on his person, although Officer King was unaware of that fact until after the shooting.  See id. at 6; ECF No. 119 at 5. Plaintiff contends that a fact of which Officer King was unaware has no relevance to an objectively reasonable officer in an excessive force case.  ECF No. 106 at 6.

        Insofar as Young could fairly be described as "armed" regardless of Officer King's knowledge, this matter is best left for cross-examination.  Cf. C&E Servs., Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence.").  The court denies motion 17.

F. Motion 18

Motion 18 seeks to exclude evidence and testimony that Officer King was not criminally charged for shooting and killing Young.  ECF No. 106 at 6-7.  Defendants contend that this evidence is admissible to counter plaintiff's expert witness "who has offered opinions that Officer King acted improperly." ECF No. 199 at 6.  The lack of criminal prosecution, defendants state, "is relevant to rebut the opinions offered by [plaintiff's expert] that Officer King engaged in wrongful conduct."  Id.

"There is no doubt that the mention of '[n]o arrest' . . . [is] improper, for evidence of non-arrest, like evidence of nonprosecution or acquittal of a crime, is generally inadmissible in a civil trial concerning the same incident." Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 147 (3d Cir. 2002) (first alteration in original); accord Stalnaker v. City of Charleston, 934 F.2d 320, 1991 WL 87537, at *2 (4th Cir. 1991) (unpublished decision) (stating "the general rule that evidence of an acquittal is not admissible in a civil action that involves the same or similar circumstances as those involved in the underlying criminal case," and citing cases).  The court grants motion 18.

### G. Motion 19

Motion 19 seeks to exclude unidentified evidence or argument related to larger political and societal debates about the role and support of police in the country.  <u>See</u> ECF No. 106 at 7-8.  The court denies motion 13 as premature.

### H. Motion 20

Motion 20 seeks to exclude audio statements of plaintiff, plaintiff's husband, and plaintiff's son.  <u>Id.</u> at 8.  Plaintiff contends that these statements are hearsay.  <u>Id.</u>  Defendants respond that they do not intend to offer the statements unless needed for impeachment.  ECF No. 119 at 6.  Thus, the court denies motion 20 as moot.

### IV. Conclusion

For the reasons stated above, the court ORDERS as follows:

1.  that defendants' motion to exclude Dr. Bauer's opinions on the respective positions of Officer King and Young be, and hereby is, denied;

2.   that defendants' motion to exclude Dr. Bauer's opinion on whether Young was holding a knife during the shooting be, and hereby is, granted consistent with the reasons and to the extent stated herein;

3.   that defendants' motion to exclude Gerard's "ultimate issue" testimony be, and hereby is, denied consistent with the reasons and to the extent stated herein;

4.   that defendants' motion to exclude the written transcript of Officer King's interview taken in the aftermath of the shooting unless the audio of the recording is introduced at the same time be, and hereby is, granted;

5.   that defendants' motion to exclude undisclosed evidence of special damages be, and hereby is, granted;

6.   that defendants' motion to exclude evidence of punitive damages or, alternatively, to bifurcate the issue of punitive damages be, and hereby is, granted consistent with the reasons and to the extent stated herein;

7.  that plaintiff's motions in limine 1 through 10 be,
    and hereby are, granted consistent with the reasons
    and to the extent stated herein;

8.  that plaintiff's motion in limine 11 through 13 be,
    and hereby is, denied as premature;

9.  that plaintiff's motions in limine 14 and 15 be, and
    hereby are, denied consistent with the reasons and to
    the extent stated herein;

10. that plaintiff's motion in limine 16 be, and hereby
    is, granted consistent with the reasons and to the
    extent stated herein;

11. that plaintiff's motion in limine 17 be, and hereby
    is, denied;

12. that plaintiff's motion in limine 18 be, and hereby
    is, granted;

13. that plaintiff's motion in limine 19 be, and hereby
    is, denied as premature; and

14. that plaintiff's motion in limine 20 be, and hereby
    is, denied as moot.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER: September 30, 2021

John T. Copenhaver, Jr.
Senior United States District Judge